United States District Court
Southern District of Texas
**ENTERED**
April 08, 2024
Nathan Ochsner, Clerk

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| TOPSTONE COMMUNICATIONS, INC., § § Plaintiff, § § VS. § CHENYI XU, *et al.*, § § Defendants. § | § § § § CIVIL ACTION NO. 4:22-CV-00048 § § § § |

## MEMORANDUM & ORDER

Before the Court is Defendants Chenyi Xu ("Xu") and Zhejiang Chaoqian Telecommunication Technologies Co., Ltd.'s[1] ("Chaoqian") Motion to Dismiss. ECF No. 25. For the below reasons, the Court **GRANTS IN PART** Defendants' Motion and **GRANTS** Plaintiff Topstone Communication, Inc. ("Topstone") **LEAVE TO AMEND** its TUTSA claim.

### I.  BACKGROUND

Topstone is a distributor, and Chaoqian is a manufacturer, of telecommunications products. Pl.'s Am. Compl. ("Compl.") ¶ 6, ECF No. 4. Topstone alleges that it entered into an agreement with Chaoqian on November 1, 2007, which provided that Topstone would be the exclusive distributor of Chaoqian products within the United States. *Id.* at ¶ 7. The parties later extended the agreement to further encompass North and South America. *Id.* at ¶ 8. The agreement provided that Chaoqian would (1) use its best efforts to fill or supply Topstone's orders, (2) not solicit or accept orders that did not come through Topstone, and (3) refer any inquiries or orders in North or South America to Topstone. *Id.* at ¶ 9. Topstone, in turn, was

---

[1] In its Motion to Dismiss, Chaoqian informed the Court that it was improperly sued as "Zhejian Chaoquian Tech. Co., Ltd." ECF No. 25 at 1.

1

prohibited from selling the products of Chaoqian's competitors without Chaoqian's written approval. *Id.* at ¶ 10. For many years, the parties appeared to have honored the terms of the agreement.

Around April 15, 2008, Defendant Xu became a majority shareholder, and then a director, of Topstone.[2] *Id.* at ¶¶ 12–13. Then, Topstone alleges, "[o]n or about October 5, 2021, Xu sent an email to Topstone on behalf of [Chaoqian] notifying Topstone that [Chaoqian] was immediately terminating the exclusive distributor agreement." *Id.* at ¶ 15. Xu then informed Topstone that Chaoqian was ceasing all business with Topstone, "including filling or supplying orders that Topstone had already procured for ZCTT's products." *Id.* at ¶ 16. After terminating the business relationship, Chaoqian allegedly attempted to steal Topstone's customers by directing them to order their products directly from Chaoqian, rather than through Topstone. *Id.* at ¶ 17.

Based on these events, Topstone filed suit in state court. *See* ECF No. 1. Defendants removed the action to this Court. *Id.* Topstone's First Amended Complaint sets forth four causes of action: (1) breach of contract, (2) misappropriation of trade secrets, in violation of the Texas Uniform Trade Secrets Act ("TUTSA"), (3) breach of fiduciary duty, and (4) civil conspiracy. Compl. ¶¶ 20–29. Defendants' Motion seeks dismissal of all four of Topstone's claims.

II.     **LEGAL STANDARD**

A court may dismiss a complaint for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). "To survive a Rule 12(b)(6) motion to dismiss, a complaint 'does not need detailed factual allegations,' but must provide the plaintiff's grounds for entitlement to relief—including factual allegations that when assumed to be true 'raise a right to relief above the speculative level.'" *Cuvillier v. Taylor*, 503 F.3d 397, 401 (5th Cir. 2007)

---

[2] Topstone's Amended Response to Defendants' Motion to Dismiss states that "Xu is an officer of [Chaoqian]." ECF No. 29 at 1. It does not allege this fact in its First Amended Complaint.

(quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). This must be more than "[a]n unadorned, the-defendant-unlawfully-harmed-me accusation" or "a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Rather, a claim is plausible on its face only "when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678.

In the Fifth Circuit, motions to dismiss under Rule 12(b)(6) are viewed with disfavor and are rarely granted. *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 232 (5th Cir. 2009); *Lowrey v. Texas A & M Univ. Sys.*, 117 F.3d 242, 247 (5th Cir. 1997). "The motion to dismiss should not be granted unless the plaintiff would not be entitled to relief under any set of facts that he could prove consistent with the complaint." *Johnson v. Johnson*, 385 F.3d 503, 529 (5th Cir. 2004

As a general matter, when considering a motion to dismiss, district courts limit their review "to the contents of the pleadings, including attachments thereto." *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir. 2000) (citing FED. R. CIV. P. 12(b)(6)). However, courts may also consider documents that a defendant attaches to its motion to dismiss if they are referred to in the plaintiff's complaint and are central to the plaintiff's claim. *Id.* In this case, the Court finds that it may consider the exclusive distribution agreement, as it is a document central to Topstone's breach of contract claim, and it is attached to both parties' briefs.

### III. ANALYSIS

#### A. Breach of Contract

Defendants argue that Topstone has not stated a breach of contract claim against them, because it has not and cannot show that Chaoqian breached the terms of the exclusive distribution agreement. The relevant provisions of the parties' agreement are as follows:

> Unless earlier terminated as provided below, the term of this Agreement shall commence the first day of November, 2007 and shall continue until the last day of October, 2010. At

the end of the term, the Agreement shall continue until terminated by either party on at least ninety (90) days prior notice.

\*　　　\*　　　\*

Any notice required by this Agreement or given in connection with it, shall be in writing and shall be given to the appropriate party by personal delivery or by certified mail, postage prepaid, or recognized overnight delivery services.

Ex. A to Defs.' Mot. ("Agreement"), ¶¶ 11, 17, ECF No. 25-1.

Defendants point out that, pursuant to the terms of the agreement, "Chaoqian had the right to terminate the Agreement without cause after October 31, 2010," and, as such, "Chaoqian's notice of termination to Plaintiff on October 5, 2021 was permissible and proper." ECF No. 25 at 4. Defendants are correct that Chaoqian had the right to provide notice of termination to Plaintiff. However, Chaoqian did not provide notice in the proper manner. There is no evidence that it provided written notice "by personal delivery or by certified mail." Agreement ¶ 17. The First Amended Complaint alleges that Chaoqian provided notice of termination via email. Compl. ¶ 15. Based on these allegations, and the notice provision of the contract, the Court finds and holds that dismissal of Topstone's breach of contract claim is inappropriate at this juncture.

### B. Misappropriation of Trade Secrets

Under Texas law, a plaintiff seeking recovery for trade secret misappropriation must demonstrate the following elements: "(a) a trade secret existed; (b) the trade secret was acquired through a breach of a confidential relationship or discovered by improper means; and (c) use of the trade secret without authorization from the plaintiff." *Wellogix, Inc. v. Accenture, L.L.P.*, 716 F.3d 867, 874 (5th Cir. 2013) (quoting *Phillips v. Frey*, 20 F.3d 623, 627 (5th Cir. 1994)). Here, Defendants submit that Topstone has not sufficiently pled that a trade secret existed.

TUTSA defines "trade secret" expansively, noting that it comprises "all forms and types of information, including . . . list[s] of actual or potential customers" so long as,

> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

TEX. CIV. PRAC. & REM. CODE ANN. § 134A.002(6).

Federal courts, applying Texas law, have noted that a customer list may constitute a trade secret if it meets the above criteria, *A.M. Castle & Co. v. Byrne*, 123 F. Supp. 3d 895, 902 (S.D. Tex. 2015) (collecting cases), and that "[t]he existence of a trade secret is properly considered a question of fact to be decided by the judge or jury as fact-finder," *Gen. Universal Sys., Inc. v. Lee*, 379 F.3d 131, 150 (5th Cir. 2004) (quoting Restatement (Third) Unfair Competition § 39 cmt. (1995); *see also Wellogix*, 716 F.3d at 874.

However, there is a "growing consensus among district courts in this circuit that plaintiffs bringing claims of trade secret misappropriation must 'identify, with reasonable particularity, the alleged trade secrets at issue.'" *UOP LLC v. Exterran Energy Sols.*, L.P., No. 4:21-CV-02804, 2021 WL 8016712, at *1 (S.D. Tex. Sept. 28, 2021) (quoting *StoneEagle Servs., Inc. v. Valentine*, No. 3:12-cv-1687, 2013 WL 9554563, at *2 (N.D. Tex. June 5, 2013)). While plaintiffs need not identify specific trade secrets in their pleadings, *see Downhole Tech. LLC v. Silver Creek Servs. Inc.*, No. H-17-0020, 2017 U.S. Dist. LEXIS 64189, at *11 (S.D. Tex. 2017), they do need to describe the trade secrets with enough clarity for "defendants [to] understand how each claimed trade secret differs from information in the public domain," *UOP*, 2021 WL 8016712, at *1. For instance, courts have dismissed complaints that allege trade secrets in "broad, categorical terms,

5

more descriptive of the types of information that generally may qualify as protectable trade secrets than as any kind of listing of particular trade secrets [the plaintiff] has a basis to believe actually were misappropriated." *Am. Biocarbon, LLC v. Keating*, No. CV 20-00259-BAJ-EWD, 2020 WL 7264459, at *5 (M.D. La. Dec. 10, 2020) (quoting *Vendavo, Inc. v. Price f(x) AG*, No. 17-CV-06930-RS, 2018 WL 1456697, at *4 (N.D. Cal. Mar. 23, 2018)) (applying federal law that defines "trade secret" in a near-identical manner to TUTSA). In *Am. Biocarbon* and similar cases referenced therein, the plaintiff had essentially repeated every type of information that the statute said may constitute a trade secret. The court concluded that, faced with such all-encompassing allegations, there was no means by which "to ascertain at least the boundaries within which the secret lies." *Id.* at *5 (quoting *Navigation Holdings, LLC v. Molavi*, 445 F. Supp. 3d. 69, 75 (N.D. Cal. 2020)). The court granted the defendant's motion to dismiss and gave plaintiff leave to amend. *Id.*

  While it is a close case, the Court concludes that Topstone has not pled facts sufficient to state a claim for misappropriation of trade secrets. Topstone's complaint alleges that Defendants "stole or attempted to steal Topstone's customers informing them to order their products directly from ZCTT," and, relatedly, "misappropriated Topstone's customers list and have or are attempting to divert purchase orders from Topstone's customers." Compl. ¶¶ 17, 23. These allegations do not separate Topstone's information from matters of general knowledge. *See Navigation Holdings*, 445 F. Supp. 3d. at 77 (interpreting law with nearly identical trade secret definition).

  Accordingly, the Court dismisses Topstone's misappropriation of trade secrets claim without prejudice, and grants Topstone leave to amend this claim. In its amended complaint, Topstone should provide additional details to aid the Court, and Defendants, in distinguishing the

allegedly misappropriated information from information that is in the public domain. *See, e.g.*, *id.* at 77 (reciting allegations that provided a detailed-enough description of client information to state a claim for misappropriation of trade secrets).

### C. Breach of Fiduciary Duties and Civil Conspiracy

Defendants assert that TUTSA preempts Topstone's claims for breach of fiduciary duty and civil conspiracy. TUTSA's preemption provision provides that the statute "displaces conflicting tort, restitutionary, and other law of this state providing civil remedies for misappropriation of a trade secret" but that it does not preempt "(1) contractual remedies, whether or not based upon misappropriation of a trade secret; (2) other civil remedies that are not based upon misappropriation of a trade secret; or (3) criminal remedies, whether or not based upon misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007.

Topstone's breach of fiduciary duty and civil conspiracy claims are based on the same facts underlying its TUTSA trade secret misappropriation claim. *See* Compl. ¶¶ 22–29. As just discussed, however, it is not yet clear to the Court whether Topstone's customer lists are a trade secret under TUTSA. Federal courts have taken differing approaches when faced with such a situation.

In *AMID, Inc. v. Medic Alert Found. United States, Inc.*, the plaintiff "sought relief on the theory that [defendant] misappropriated information protected as trade secrets, and alternatively under the theory that the misappropriated information was not a trade secret but was confidential." 241 F. Supp. 3d 788, 827 (S.D. Tex. 2017). The *AMID* court allowed these alternative theories to proceed, reasoning that it was premature to dismiss alternative theories as preempted where it had not yet determined whether the relevant information constituted trade secrets. *Id.* at 826–27. Other federal courts, analyzing identical provisions of the applicable

7

Uniform Trade Secrets Acts, have reached similar conclusions. *See, e.g.*, *AWP, Inc. v. Commonwealth Excavating, Inc.*, Civ. No. 5:13-cv-031, 2013 WL 3830500 (W.D. Va. July 24, 2013) (holding that "defendant's preemption argument [was] premature" where plaintiff "ha[d] not yet proven its entitlement to relief under the VUTSA"); *Stone Castle Fin., Inc. v. Friedman, Billings, Ramsey & Co.*, 191 F. Supp. 2d 652, 659 (E.D. Va. 2002) (explaining that "unless it can be clearly discerned that the information in question constitutes a trade secret, the Court cannot dismiss alternative theories of relief as preempted by the VUTSA").

The majority of federal courts have taken a different approach. *See Embarcadero Techs., Inc. v. Redgate Software, Inc.*, No. 1:17-CV-444-RP, 2018 WL 315753, at *3 (W.D. Tex. Jan. 5, 2018) (collecting cases). In *Embarcadero*, a district court found that "TUTSA's preemption provision encompasses all claims based on the alleged improper taking of confidential business information." *Id.* The *Embarcadero* court reasoned that the underlying purpose of TUTSA's preemption provision was to "prevent inconsistent theories of relief for the same underlying harm by eliminating alternative theories of common law recovery which are premised on the misappropriation of a trade secret," and that narrowing "the preemption's application exclusively to information that qualifies as a trade secret under the statute would frustrate this purpose." *Id.* (citation omitted).

Recently, a judge in this district surveyed these competing approaches and adopted the *AMID* court's reasoning. *DHI Grp., Inc. v. Kent*, 397 F. Supp. 3d 904, 923 (S.D. Tex. 2019). In *DHI Group*, the court reasoned that "the plain language of the TUTSA's preemption provision" cannot "be read to preempt civil remedies for the misappropriation of information that is not a trade secret." *Id.* The court noted that neither party had established that the information at issue in the case was a trade secret, and, as such, "the court [could not] say whether any of Plaintiffs'

8

non-TUTSA claims [were] preempted." *Id.* The court noted, however, that "[i]f it is later established that any of the illicitly obtained information is a trade secret under the TUTSA, then the TUTSA preempts Plaintiffs' claims involving the misappropriation of that information." *Id.*

This Court concludes that the language and purpose of TUTSA best support the *AMID* and *DHI Group* courts' approaches, and that Topstone's breach of fiduciary duty and conspiracy claims are (at least at this juncture) not preempted by TUTSA. TUTSA's preemption provision provides that it does not displace "civil remedies that are not based upon misappropriation of a trade secret." TEX. CIV. PRAC. & REM. CODE § 134A.007(b). This statutory text necessarily implies that TUTSA does not preempt civil remedies based on misappropriation of confidential information that does not fall within the definition of "trade secret." The *Embarcadero* court's approach would effectively read the term "trade secret" out of the statute, replacing it with "confidential information."

Apart from the statute's plain language, two observations bolster the Court's conclusion. First, as the *Embarcadero* court noted, the purpose of TUTSA's preemption provision is to prevent inconsistent theories of relief for the same underlying harm. 2018 WL 315753, at *3. While some courts have interpreted this statutory purpose to lead to broad preemption, it can also be read to imply that the preemption provision applies only to claims involving misappropriation of trade secrets. If the preemption provision is read to apply to claims for misappropriation of confidential information that does not constitute a trade secret, it will go beyond its purpose of eliminating *alternative* theories of recovery, and instead eliminate certain theories of recovery that are not otherwise covered by TUTSA altogether. Effectively, the *Embarcadero* court's interpretation of TUTSA would cut off any pathway to recovery in situations where confidential,

9

but non-trade secret, information has been misappropriated. This result stretches beyond the purpose of TUTSA.

Second, TUTSA's definition of "trade secret" is expansive. It includes:

> [A]ll forms and types of information, including business, scientific, technical, economic, or engineering information, and any formula, design, prototype, pattern, plan, compilation, program device, program, code, device, method, technique, process, procedure, financial data, or list of actual or potential customers or suppliers, whether tangible or intangible and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing if:
>
> (A) the owner of the trade secret has taken reasonable measures under the circumstances to keep the information secret; and
>
> (B) the information derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information.

TEX. CIV. PRAC. & REM. CODE § 134A.002(6). It would be surprising for TUTSA's drafters to define "trade secret" so broadly yet intend that it take on an even *more* expansive meaning (i.e., to apply to the types of information within the definition, as well as confidential information outside of the definition) for the purposes of TUTSA's preemption provision. *Cf. Brown v. Gardner*, 513 U.S. 115, 118 (1994) (noting that "there is a presumption that a given term is used to mean the same thing throughout a statute").

All in all, the Court concludes that TUTSA's preemption provision is best read to preempt only those claims that allege misappropriation of trade secrets. As noted above, the Court is not yet able to determine whether Topstone's customer lists amount to trade secrets. When Topstone files its second amended complaint, the Court will assess whether (1) Topstone's TUTSA claim may proceed, which would mean that its breach of fiduciary duty and civil conspiracy claims are preempted; or (2) Topstone's TUTSA claim must be dismissed, which would mean that its breach of fiduciary duty and civil conspiracy claims are not preempted. At this stage, then, Defendants'

motion to dismiss is denied insofar as it urges dismissal of Topstone's breach of fiduciary duty and civil conspiracy claims.

## IV. CONCLUSION

For the forgoing reasons, the Court **GRANTS IN PART** Defendants' Motion to Dismiss. The Court **DENIES** Defendants' Motion with respect to Plaintiff's breach of contract, breach of fiduciary duty, and civil conspiracy claims. The Court **GRANTS** Defendants' Motion with respect to Plaintiff's misappropriation of trade secrets claim; this claim is **DISMISSED WITHOUT PREJUDICE**. Plaintiff may file its Second Amended Complaint within **15 days** of the issuance of this Order. Defendant may file a Motion to Dismiss the Second Amended Complaint within **15 days** of the filing of Plaintiff's Second Amended Complaint. Plaintiff may not amend portions of its complaint unrelated to its misappropriation of trade secrets claim without leave of the Court.

**IT IS SO ORDERED.**

**SIGNED** at Houston, Texas on this the 8th day of April, 2024.

_____
KEITH P. ELLISON
UNITED STATES DISTRICT JUDGE